## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREE MARKET ENVIRONMENTAL | ) | |
|   LAW CLINIC | ) | |
| 9033 Brook Ford Road | ) | |
| Burke, Virginia, 22015 | ) | |
| | ) | |
| ENERGY & ENVIRONMENT LEGAL INSTITUTE | ) | |
| 2020 Pennsylvania Avenue, NW #186 | ) | |
| Washington, DC 20006 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1778 |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
|     PROTECTION AGENCY | ) | |
| 1200 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20460 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Energy & Environment Legal Institute ("EELI") and Free Market Environmental

Law Clinic ("ELC") for their complaint against Defendant United States Environmental

Protection Agency ("EPA" or "the Agency"), allege as follows:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel

production under one July, 2013 FOIA request seeking certain recent EPA correspondence

relating to a prospective coal export terminal(s) popularly known as the Northwest Export

Terminal, and EPA's obligation to waive or substantially reduce fees as mandated by 5 U.S.C.

§ 552(a)(4)(A)(iii). (That provision applies when "disclosure of the information is in the

public interest because it is likely to contribute significantly to public understanding of the

operations or activities of the government and is not primarily in the commercial interest of the requester.")

2. The requested correspondence, whether with external parties or internal or intra-governmental, are "agency records" under federal record-keeping and disclosure laws. They are of significant public interest, with pressure groups having mobilized nationally to stop export terminals and the issue playing a central role in local elections in the Pacific Northwest. These projects have also become the subject of FOIA requests from disparate groups.[1]

3. EPA refuses to grant Plaintiff ELC's waiver of fees under FOIA for any requested records, and both plaintiffs' request for fee waiver for internal or intra-governmental correspondence.

4. EPA Region 6 recently granted both plaintiffs' request for fee waiver for an identical request regarding a prospective Texas terminal, releasing both internal and external correspondence.

5. FOIA is designed to allow the citizen "to know what his government is up to" (*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989))[2], not just some citizens, or in some regions, or what his government is up to with outside groups but not internally.  EPA's selective demand for fees arbitrarily, and incorrectly, applies the fee waiver provision and as a result impermissibly frustrates the purposes of the Freedom of Information Act.

6. The instant fee waiver denial represents EPA's resumption of an abusive practice of imposing a barrier to access for certain groups, a practice that has increased in recent years. Specifically, EPA denies fee waiver requests for groups that generally oppose EPA's regulatory

---

[1] *See, e.g.*, Manuel Quiñones, *Group sues Army Corps for documents in ongoing export battle,* ENERGY & ENVIRONMENT DAILY, Aug. 27, 2013, http://www.eenews.net/greenwire/2013/08/27/stories/1059986470.

[2] This famous application to FOIA cites to Justice Douglas's dissent in *EPA v. Mink*, 410 U.S. 73, 105 (1973).

agenda while routinely granting them for ideologically aligned groups with which it works closely to advance that agenda.[3]  Other federal agencies have of late treated unwanted requests similarly.[4]  At Defendant EPA, this practice of disparate, selective application of FOIA fee waivers on initial determination is subject to an ongoing Inspector General (IG) inquiry.[5]

---

[3] *See* U.S. Senate Comm. on Env't & Public Works Committee, Blog, *EPA Playing Politics with FOIA Fee Waivers*, May 20, 2013, http://www.epw.senate.gov/public/index.cfm?FuseAction=Minority.Blogs&ContentRecord_id=c27df7a8-05c9-6f77-6358-176a2c04e854. *See also, e.g.*, Ben Geman, *EPA to review claims of bias against conservatives amid fight over IRS*, THE HILL, May 16, 2013, http://thehill.com/blogs/e2-wire/e2-wire/300167-epas-internal-watchdog-to-probe-bias-claims-amid-gop-comparisons-to-tax-scandal. In the experience of plaintiffs' counsel, EPA routinely overturned this practice issuing of "initial determinations", both constructive and express on administrative appeal, never actually defending the practice or charging plaintiffs or similar groups fees.

[4] *See* February 21, 2012 letter from public interest or transparency groups to four federal agencies requesting records regarding a newly developed pattern of fee waiver denials and imposition of "exorbitant fees" under FOIA as a barrier to access, *available at* http://images.politico.com/global/2012/03/aclueffeewvrfoialtr.pdf; *see also National Security Counselors v. CIA* (CV: 12-cv-00284(BAH), filed D.D.C Feb. 22, 2012); *see also* "Groups Protest CIA's Covert Attack on Public Access," OpentheGovernment.org, Feb. 23, 2012, http://www.openthegovernment.org/node/3372. These "initial determinations", both constructive and express, were routinely overturned on administrative appeal.

[5] *See* Memorandum from Carolyn Copper, Assistant Inspector General, Office of Program Evaluation, Office of the Inspector General, U.S. Envtl. Prot. Agency, to Malcolm D. Jackson, Assistant Adm'r and Chief Information Officer, Office of Envtl. Information, U.S. Envtl. Prot. Agency, "Notification of Evaluation of EPA's Freedom of Information Act Fee Waiver Process," Jun. 19, 2013, *available at* http://www.epa.gov/oig/reports/notificationMemos/newStarts_06-19-13_FOIA_Fee_Waiver_Process.pdf. *See also* Letter from Hon. David Vitter, Ranking Member, S. Comm. on Env't & Pub. Works, Hon. Darrell E. Issa, Chairman, H. Comm. on Oversight & Gov't Reform, Hon. Lamar Smith, Chairman, H. Comm. on Science, Space, & Technology, to Hon. Arthur A. Elkins, Jr., Reg'l Adm'r, Inspector General, U.S. Envtl. Prot. Agency (Feb. 7, 2013).

  It was undersigned plaintiffs' counsel who exposed this, among other EPA abuses, leading to great media attention, public embarrassment, and scrutiny from congressional oversight.  Plaintiffs' counsel Horner has also obtained an internal EPA email counseling FOIA staff of a "standard protocol" to follow placing hurdles in the way of certain requesters. *See* E-mail from Geoffrey Wilcox, Office of General Counsel, U.S. Envtl. Prot. Agency, to Joe Kordzi, U.S. Envtl. Prot. Agency Region 6 (Jan. 12, 2011, 05:22 PM) available at http://www.epw.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=cd4e677a-52b9-412f-9464-d2963fee7dec , suggesting that a FOIA officer inform "such request[er]s", *inter alia*, "that it will probably cost more than the amount of $ they agreed to pay".

7. With the IG having concluded its preliminary survey to determine if there was enough evidence to support a full blown investigation,[6] EPA has returned to its practice, if more aggressively than before, now for the first time denying plaintiffs' fee waiver on appeal.[7]

8. EPA refuses to produce the described, public records despite the fact that EPA's actions in an identical request affirm that the records at issue are of public interest and not subject to FOIA fees, and in the face of revelations about organized and systemic abuses by senior federal employees to hide their activities from the public which have led to numerous calls for federal agencies to focus on complying with their FOIA obligations.[8]

9. Accordingly, plaintiffs file this lawsuit to compel EPA to comply with the law.

10. Transparency in government is the subject of high-profile vows by the president and attorney general that FOIA will "be administered with a clear presumption: In the face of doubt, openness prevails" (*See* Attorney General Eric Holder, *OIP Guidance: President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines, Creating a "New Era of Open Government"*, www.justice.gov/ oip/foiapost/2009foiapost8.htm; *Memorandum for the Heads of Executive Departments*, www.whitehouse.gov/the_press_office/ Freedom_of_Information_Act).

---

[6] Plaintiffs assert on information and belief that the IG determined that there was sufficient evidence to warrant a full investigation and has scoped the second stage of review, with its report expected for late Spring 2014.  During the initial phase of the IG's inquiry, EPA adopted a new practice of classifying plaintiffs' requests simply as "not billable", avoiding adding to the already robust precedent that plaintiffs' requests warrant fee waiver under FOIA

[7] *See e.g.*, FOIA requests 2013-009196, 2013-009621, R3-2013-008601, 2013-008045, 2013-008049, 2013-006858, 2013-009196, R3-2013-008553.

[8] *See, e.g.*, U.S. House of Representatives Comm. on Oversight and Government Reform, Hearing, "Preventing Violations of Federal Transparency Laws," Sept. 10, 2013, *available at* http://oversight.house.gov/hearing/ preventing-violations-of-federal-transparency-laws/.

**PARTIES**

11. Plaintiff Free Market Environmental Law Clinic is a nonprofit research, public policy and public interest litigation center based in Virginia and dedicated to training lawyers and law students in administrative and appellate law, in the context of programs advancing responsible regulation and in particular economically sustainable environmental policy.  ELC's programs include research, publication and providing counsel for litigation and include a transparency initiative seeking public records relating to environmental and energy policy and how policymakers use public resources.

12. Plaintiff Energy & Environment Legal Institute is a nonprofit research, public policy based, and public interest litigation center incorporated in Virginia[9] and dedicated to advancing responsible regulation and in particular economically sustainable environmental policy.  EELI's programs include a transparency initiative seeking public records relating to environmental and energy policy and how policymakers use public resources, as part of its overall research and publication activities.

13. Defendant EPA is a federal agency headquartered in Washington, D.C.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because Defendant is a federal agency headquartered in the District of Columbia and this is an action brought by statute in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

_____

[9] The American Tradition Institute to EELI recently changed its name to more accurately reflect its focus. *See e.g.* Press Release, THE ENERGY & ENVIRONMENT LEGAL INSTITUTE, Oct. 3, 2013, http://www.prnewswire.com/news-releases/introducing-the-energy--environment-legal-institute-ee-legal-226354261.html.

15. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because

Defendant EPA is a federal agency operating in the District of Columbia and a substantial part

of the events or omissions giving rise to the claim occurred in the District of Columbia.

## FACTUAL BACKGROUND

### Plaintiffs' FOIA Request EPA-R10-2013-008285 Seeking Certain Correspondence Relating to a Prospective Northwest Export Terminal

16. On July 16, 2013, ELC and EELI submitted a FOIA Request by electronic mail to

r10.foia@epa.gov and epa-seattle@epa.gov seeking (emphases in original):

> copies of **emails, text messages, or instant messages** sent **to or from** (including
> also as cc: or bcc:) any EPA-assigned account of, *or EPA-related emails or text
> messages to or from any other account used by,* staff or officials of EPA Region 10's
> **1)** Seattle Office of Air, Waste and Toxics (AWT), **2)** Seattle Office of Water and
> Watersheds (OWW), and/or **3)** its Lacey Washington Operations Office, **4)** which are
> dated from January 1, 2012 to the date you process this request, and **5)** which include
> one or more of the following words: "Riverkeeper" (or "Riverkeepers"), "RFK",
> "export", "terminal",  **and/or** "responder".

17. By email on the same date EPA Region 10 assigned this FOIA request identification number

EPA-R10-2013-008285.

18. The conceptual projects in the Pacific Northwest, or EPA Region 10, underlying the request at

issue in this matter have engendered a wider national debate regarding the role of coal in this

Administration's "climate" and energy plans,[10] about how efforts to block export terminals are

---

[10] *See, e.g.,* Lynne Peeples, *Coal Exports Contradict Obama's Climate Pledge, Critics Say,* THE HUFFINGTON POST, Jul. 25, 2013, http://www.huffingtonpost.com/2013/07/25/coal-exports-obama-climate_n_3646584.html, Tony Lystra, Erik Olson, *The Greenhouse Effect: Measuring Longview terminal's potential impact on climate,* LONGVIEW [WA] DAILY NEWS, Oct. 26, 2013, http://www.eenews.net/climatewire/stories/1059989539/feed, Manuel Quiñones, *Senators warn against broad GHG review for coal exports,* ENERGY & ENVIRONMENT DAILY, Nov. 1, 2013 http://www.eenews.net/eedaily/2013/11/01/stories/1059989805, Clifford Krauss, *Coal Industry Pins Hopes on Exports as U.S. Market Shrinks,* NEW YORK TIMES, Jun. 14, 2013, http://www.nytimes.com/2013/06/15/business/energy-environment/a-fight-over-coal-exports-and-the-industrys-future.html?pagewanted=all&_r=0.

harming Indian tribes,[11] and about the central focus they have become for pressure groups[12] and in regional politics.[13]   Five of six proposals for a Northwest export terminal have been shelved with subsequent and substantial adverse economic impacts.[14]

19. In response to plaintiffs' identical request for records from Region 6 regarding a prospective terminal in Corpus Christi, TX, EPA (Region 6) released the requested records, with a "full grant" of both plaintiffs' fee waiver request.[15] Responsive records included primarily *internal* EPA correspondence.

20. Defendant's markedly different response to the request at issue in this matter has so far entailed taking an extension of time to respond at the initial determination stage, then denying both plaintiffs' fee waiver request, on facially untrue grounds -- that plaintiffs did not in fact assert an intention to broadly disseminate requested information.

---

[11] *See, e.g.*, Terry L. Anderson and Shawn Regan, *The War on Coal is Punishing Indian Country*, WALL STREET JOURNAL, Oct. 12, 2013, http://online.wsj.com/article/SB10001424052702304906704579111030189700024.html?mod=WSJ_Opinion_LEFTTopOpinion, Manuel Quiñones, *Sagging domestic market has Mont. mine, tribe rolling dice on exports*, ENERGY & ENVIRONMENT DAILY, Sept. 16, 2013, http://www.eenews.net/greenwire/stories/1059987299, Ron Arnold, *Native Americans are among chief victims of Big Green's war on coal*, WASHINGTON EXAMINER, Oct. 18, 2013, http://washingtonexaminer.com/native-americans-are-among-chief-victims-of-big-greens-war-on-coal/article/2537397.

[12] *See, e.g.*, Coral Davenport, *In a Switch, Green Groups Are Outspending Their Industry Foes--And Winning*, NATIONAL JOURNAL, Oct. 26, 2013, http://www.nationaljournal.com/energy/in-a-switch-green-groups-are-outspending-their-industry-foes-and-winning-20131026 May 8, 2013, Manuel Quiñones, *Export foes launch 'aggressive' ad push*, ENERGY & ENVIRONMENT DAILY, Sept. 16, 2013, Manuel Quiñones, *Groups press Ore. governor to block exports*, ENERGY & ENVIRONMENT DAILY, Oct. 3, 2013, Manuel Quiñones, *Cash from industry, enviros flows into local race at heart of Wash. export fight*, ENERGY & ENVIRONMENT DAILY, Oct. 22, 2013, http://www.eenews.net/greenwire/2013/10/22/stories/1059989217; Lachlan Markay, *Republicans: Tom Steyer Violating Washington State Campaign Laws*, WASHINGTON FREE BEACON, Oct. 24, 2013, http://freebeacon.com/republicans-tom-steyer-violating-washington-state-campaign-laws/.

[13] *See e.g.*, Manuel Quiñones, *Northwest governors face Keystone-like conundrum over export terminals*, ENERGY & ENVIRONMENT DAILY, May 21, 2013.

[14] *See e.g.*, Manuel Quiñones, *Company scraps plans for Ore. export terminal*, ENERGY & ENVIRONMENT NEWS, May 8, 2013 (no direct URL available), Manuel Quiñones, *Coal: company scuttles plan for Texas export terminal*, ENERGY & ENVIRONMENT NEWS, Aug. 21, 2013, http://www.eenews.net/greenwire/2013/08/21/stories/1059986284 (subscription required).

[15] FOIA request EPA-R6-2013-009363, records released Nov. 1, 2013, https://foiaonline.regulations.gov/foia/action/public/view/request?objectId=090004d2800a82e7.

21. In their request plaintiffs dedicated nearly two pages of discussion to their intention and ability to broadly disseminate responsive information substantially informing a broad segment of the public. This included over 370 words and a 248 word footnote citing examples of its similar dissemination of information obtained under FOIA.

22. Region 10 official Bob Hartman (plaintiffs believe this was Robert Hartman, Assistant Regional Counsel) called plaintiffs on August 6, 2013, requesting clarification about the intended scope of plaintiffs' request.  Mr. Hartman did not ask for further information about plaintiffs' intention or ability to broadly disseminate information, or how requested information might substantially inform the public.

23. By letter delivered via electronic mail on August 14, 2013, the date on which EPA's response was due, EPA denied both plaintiffs' fee waiver stating that they had not in fact expressed an intention to broadly disseminate responsive records as set forth in the above-excerpted provision of their request.  ("You have not expressed a specific intent to disseminate the information to the general public". EPA Initial Determination at p. 1.)

24. Plaintiffs appealed on August 19, 2013, sent by electronic mail and bringing EPA's attention to the language in the initial request.

29. EPA's response to plaintiffs' appeal was due on September 18, 2013.  By email dated September 17, 2013, EPA informed plaintiffs it expected to provide a determination on or before September 26, 2013.

30. On October 24, 2013, EPA denied Plaintiff ELC's fee waiver for all requested records, and both plaintiffs' request for fee waiver for internal or intra-governmental correspondence, but on wholly new grounds.

31. Specifically, EPA refused to grant the fee waiver to Plaintiff ELC for obtaining external EPA correspondence on the grounds that ELC is unlikely to disseminate responsive records in a way that reaches and informs a reasonably broad audience of persons interested in the subject matter.  Defendant refuses to grant fee waiver to either plaintiff for responsive internal or intra-governmental correspondence on the grounds that those records would not contribute to an understanding of government operations or activities, or contribute significantly to public understanding of government operations or activities. Defendant's partial denial, pages 2-3.

## FOIA and Fee Waiver

32. Congress clearly intended that FOIA "fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information" (*Ettlinger v. FBI*, citing Conf. Comm. Rep., H.R. Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974) at 8. Improper refusal of fees as a means of withholding records from a FOIA requester constitutes improper withholding. *Ettlinger.*

33. Specifically, FOIA is aimed in large part at promoting active oversight roles of watchdog public advocacy groups. "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. Dep't of State*, 780 F.2d 86, 89 (D.C. Cir. 1986) (fee waiver intended to benefit public interest watchdogs), citing to *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.Mass. 1984); SEN. COMM. ON THE JUDICIARY, AMENDING THE FOIA, S. REP. NO. 854, 93rd Cong., 2d Sess. 11-12 (1974)). Fees are not "to discourage FOIA requests and to impede access to information for

precisely those groups Congress intended to aid by the fee waiver provision, [as that would] inflict a continuing hardship on the non-profit public interest groups who depend on FOIA to supply their lifeblood -- information." *Better Gov't v. State*, 780 F.2d at 94 (internal citations omitted).

34. "This is in keeping with the statute's purpose, which is 'to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F. Supp. 261, 268 (D.D.C. 2009), citing to *McClellan Ecological Seepagei*, 835 F.2d at 1284 (quoting 132 Cong. Rec. S16496 (Oct. 15, 1986) (statement of Sen. Leahy)).

35. Plaintiffs' ability to utilize FOIA -- as well as that of many nonprofit organizations, educational institutions and news media who will benefit from disclosure -- depends on their ability to obtain fee waivers. For this reason, "Congress explicitly recognized the importance and the difficulty of access to governmental documents for such typically under-funded organizations and individuals when it enacted the 'public benefit' test for FOIA fee waivers. This waiver provision was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests,' in a clear reference to requests from journalists, scholars and, most importantly for our purposes, nonprofit public interest groups. Congress made clear its intent that fees should not be utilized to discourage requests or to place obstacles in the way of such disclosure, forbidding the use of fees as '"toll gates"' on the public access road to information." *Better Gov't Ass'n v. Department of State,* 780 F.2d at 94 (internal citations omitted).

36. Public interest non-profits like plaintiffs "rely heavily and frequently on FOIA and its fee waiver provision to conduct the investigations that are essential to the performance of certain of their primary institutional activities -- publicizing governmental choices and highlighting possible abuses that otherwise might go undisputed and thus unchallenged. These investigations are the necessary prerequisites to the fundamental publicizing and mobilizing functions of these organizations.  Access to information through FOIA is vital to their organizational missions." *Id.* at 93. They therefore, like plaintiffs, "routinely make FOIA requests that potentially would not be made absent a fee waiver provision", requiring the court to consider the "Congressional determination that such constraints should not impede the access to information for appellants such as these." *Id.* at 94.

## LEGAL ARGUMENTS

### Defendant EPA Owed and has Arbitrarily and Capriciously Denied Plaintiffs a Waiver or Substantial Reduction in Fees Associated with Their Request

37. Both plaintiffs requested waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A) (iii) ("Documents shall be furnished without any charge...if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester"); *also* 40 C.F.R. §2.107(l), and (c).

38. Plaintiffs do not seek these records for a commercial purpose. Plaintiffs are organized and recognized by the Internal Revenue Service as 501(c)3 educational organizations. As such, plaintiffs also have no commercial interest possible in these records.  When no commercial interest exists, an assessment of that non-existent interest is not required in any balancing test with the public's interest.

39. As non-commercial requesters, plaintiffs are entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. Nov. 30, 2010). *See also McClellan Ecological Seepage Situation v. Carlucci*, 835 F. 2d 1284, 2184 (9th Cir. 1987)(the public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters.").

40. A fee waiver request is likely to pass muster "if the information disclosed is new; supports public oversight of agency operations, including the quality of agency activities and the effects of agency policy or regulations on public health or safety; or, otherwise confirms or clarifies data on past or present operations of the government." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d at 1284-1286. *See also*, "A requester is likely to contribute significantly to public understanding if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government." 132 Cong. Rec. H9464 (Reps. English and Kindness).

41. The requested information meets that description as specified in plaintiffs' original request and administrative appeal.  Regardless, in the instant matter EPA again seeks to improperly use fees as a barrier to impede plaintiffs from obtaining certain public records central to one of the most high-profile policy issues in the Pacific Northwest and with national economic implications, identical in nature to other records it released to plaintiffs in EPA Region 6.

42. Notwithstanding EPA's temporary practice implemented during the Inspector General's initial inquiry into disparate application of FOIA fee waivers, of classifying even substantial searches and productions involving plaintiffs' FOIA requests as "not billable" (typically,

meaning the request can be satisfied in two hours or less), both plaintiffs have received fee

waivers from EPA[16] and from other agencies.[17]

43.   EPA regularly grants fee waivers to other groups with a national reach and impact (*e.g.*,

Natural Resources Defense Council, Sierra Club, EarthJustice, Public Employees for

Environmental Responsibility and National Wildlife Federation). Both plaintiffs are similarly

national organizations, serving as requester/plaintiff and/or counsel in active lawsuits in

federal district courts in Colorado and Washington, DC, and state courts in Arizona and

Virginia, mostly pursuant to freedom of information or other open records laws.

44.   EELI, in its new name or under its previous name (ATI), is widely cited in national and even

international media outlets for its information request pursuits. Further, ELC requester and

undersigned counsel Schnare is cited discussing public records ELC obtains in publications

to which, plaintiffs are aware and assert on information and belief, EPA grants fee waiver

requests.[18]   Further, and as EPA inarguably is aware, ELC undersigned counsel Horner is

very active in disseminating FOIA-obtained information, having been cited hundreds of

---

[16] *See, e.g.*, HQ-FOI-01052-12, HQ-FOI-01058-12, R6-2013-009363, 2013-008049.

[17] *See, e.g.*, Federal Energy Regulatory Commission request ## 13-75, 13-78; Department of Labor ## 724141, 724142, 5724143, 724144, 724145, 724148; NASA # 11-GSFC-F-01158 (plus one other to which NASA did not assign a tracking number), and Department of Energy # 2012-01448.

[18] *See e.g.,* Michal Conger, *Ethics issues shadow Obama's anti-coal FERC nominee*, Washington Examiner, Jul. 31, 2013, http://washingtonexaminer.com/ethics-issues-shadow-obamas-anti-coal-ferc-nominee/article/2533701, and Risk Policy Report, *EPA Resists Legal Bid To Block Human PM Tests, Citing Regulatory Delays* Inside Washington Publishing, Vol. 19, No. 40, Oct. 9, 2012, http://insideepa.com/Risk-Policy-Report/Risk-Policy-Report-10/09/2012/epa-resists-legal-bid-to-block-human-pm-tests-citing-regulatory-delays/menu-id-1098.html.

times in the media for disseminating EPA-related public records including recently more than a dozen times in widely read publications.[19]

45. Notably, as revealed by EPA's recent document production following initiation of FOIA litigation *Competitive Enterprise Institute v. EPA* (CV:13-434 D.D.C.), EPA routinely grants fee waivers expressly to individual practitioner lawyers writing on behalf of a client if in their capacity as individuals, largely comparable to ELC's request separately but also as counsel to EELI (*e.g.*, Law Office of Kathryn M. Amirpashaie, Law Office of Robert Ukeiley, Bahr Law Offices, P.C [David Bahr], Law Offices of Daniel M. Galpern, Albert F. Ettinger, Esq.). Regardless, in the instant matter EPA denied ELC's fee waiver.

46. The same production shows EPA also grants fee waivers to other, more comparable requesters (*e.g.*, Sierra Club Environmental Law Program, Southern Environmental Law Center, Climate Law Institute).

47. The same production shows EPA grants fee waivers to local "green" organizations such as groups calling themselves "Bucket Brigades", "Michigan Chapter CAFO Water Sentinel", Buzzards Bay Coalition, Edison Wetlands Association, Concerned Citizens for the Environment of Throop, Galveston Baykeeper, Washington Forest Law Center, Northwest Environmental Advocates, and state chapters (*e.g.*, Florida Public Employees for

---

[19] *See, e.g.*, Stephen Dinan, *Obama energy nominee Ron Binz faces rocky confirmation hearing*, THE WASHINGTON TIMES, Sept. 17, 2013, http://www.washingtontimes.com/news/2013/sep/17/obama-energy-nominee-ron-binz-faces-rocky-confirma/; Stephen Dinan, *Top Obama energy nominee Ron Binz asked oil company employees for confirmation help*, THE WASHINGTON TIMES, Sept. 17, 2013, http://www.washingtontimes.com/news/2013/sep/17/top-obama-energy-nominee-ron-binz-asked-oil-compan/; Stephen Dinan, *Obama energy nominee in danger of defeat*, THE WASHINGTON TIMES, Sept. 18, 2013,
 http://www.washingtontimes.com/news/2013/sep/18/obamas-energy-nominee-danger-defeat/; Stephen Dinan, *Greens, lobbyists and partisans helping Ron Binz, Obama's FERC pick, move through Senate*, THE WASHINGTON TIMES, Sept. 12, 2013, http://www.washingtontimes.com/news/2013/sep/12/greens-lobbyists-and-partisans-helping-obamas-ferc/, Stephen Dinan, *Energy nominee Ron Binz Loses voltage with contradictions, Obama coal rules*, THE WASHINGTON TIMES, Sept. 22, 2013, http://www.washingtontimes.com/news/2013/sep/22/energy-nominee-ron-binz-loses-voltage-in-coal-war-/), Dawn Reeves, *EPA Emails Reveal Push To End State Air Group's Contract Over Conflict*, INSIDE EPA, Aug. 14, 2013.

Environmental Responsibility), implicitly asserting that even these organizations will sufficiently, broadly disseminate the information.

48. Although Defendant impeding plaintiffs is not consistent with this more liberal application of FOIA's fee waiver provision for "green" group requests, it is consistent with recent EPA moves to restrict the access of certain groups to public records. As the U.S. Senate Committee on Environment and Public Works recently detailed in a Minority Report:

> "In effect, EPA has unequivocally politicized the fee waiver process.  After reviewing over 1,200 pages of EPA fee waiver determination letters sent between January 1, 2012, and April 26, 2013, the Committee has identified clear patterns of misuse.  Based on the Committee's analysis, EPA granted 92% of requests for fee waivers made by key environmental groups, such as Sierra Club, EarthJustice, National Resources Defense Council, and Public Employees for Environmental Responsibility." (citations omitted)[20]

49. EPA's denials in the instant matter are arbitrary and capricious on their face.

### Defendant EPA Owes Plaintiffs Responsive Records, Dated From January 1, 2012 Through the Date EPA Processes the Request

50. In short, EPA has refused to provide responsive records to plaintiffs and on the grounds that ELC will not disseminate responsive records to as broad a segment of the population as would a local citizens group; also, that records representing internal or intra-governmental discussions of the Oregon and Washington State deliberations over prospective coal export terminals are not of sufficient public interest and information as are Agency discussions with outside groups or, as *e.g.*, internal emails of the sort that EPA releases under hundreds of

---

[20] Senate Environment and Public Works Committee, Minority Report, *A Call for Sunshine: EPA's FOIA and Federal Records Failures Uncovered* (Sept. 9, 2013) at 26, http://www.epw.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=513a8b4f-abd7-40ef-a43b-dec0081b5a62.

FOIA requests each year, including to plaintiffs.  *See e.g.,* HQ-FOI-0152-12 and HQ-

FOI-0158-12, filed as *American Tradition Institute v. EPA* (CV: 13-112 D.D.C.).  Further,

EPA implicitly takes the position that, while such records are of sufficient public interest and

likely to be broadly disseminated when sent or received in Region 6, they are not when sent

or received in Region 10.

51.  On their face each of these positions is arbitrary and capricious.

52.  Further, EPA must provide records through the date it processes plaintiffs' request, as

plaintiffs specified in their original request, as it would be inequitable for an intransigent

agency to benefit from its intransigence by not having to produce records through the date

they process the delayed request. *See, e.g.*, *Horner et al. v. EPA* (CV-00-535 D.D.C., settled

2004).

## FIRST CLAIM FOR RELIEF
### Duty to Release Certain Described Records, FOIA R10-2013-008285
### -- Declaratory Judgment

53.  Plaintiffs re-allege paragraphs 1-52 as if fully set out herein.

54.  FOIA requires all doubts to be resolved in favor of disclosure. The act is designed to "pierce

the veil of administrative secrecy and to open agency action to the light of scrutiny." *Dep't of*

*the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with

"the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

55.  Plaintiffs have sought and been denied production of responsive records reflecting the

conduct of official business.

56.  Plaintiffs have a statutory right to the information they seek.

57. Defendant failed to provide plaintiffs responsive records. It has done so by wrongly imposing delay and effective denial through improper demands for fees.

58. Plaintiffs have exhausted their administrative remedies.

59. The requested records are of great and timely public interest.

60. Plaintiffs ask this Court to enter a judgment declaring that

    i. EPA correspondence as specifically described in plaintiffs' request FOIA No. EPA-R10-2013-008285, and any attachments thereto, are public records, and as such, are subject to release under FOIA;

    ii. EPA's denial of plaintiffs' FOIA request seeking the described records is not reasonable, and does not satisfy EPA's obligations under FOIA

    iii. EPA must release those requested records, subject to any legitimate exemptions; and

    iv. EPA's refusal to produce the requested records is unlawful.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Duty to Release Certain Described Records, FOIA No. R10-2013-008285**
**-- Injunctive Relief**

61. Plaintiffs re-allege paragraphs 1-60 as if fully set out herein.

62. Plaintiffs are entitled to injunctive relief compelling Defendant to produce all records in its possession responsive to plaintiffs' FOIA request, subject to any legitimate withholdings.

63. This Court should enter an injunction ordering the Defendant to produce to plaintiffs within 10 business days of the date of the order, the requested records described in plaintiffs' request FOIA No. R10-2013-008285, and any attachments thereto.

## THIRD CLAIM FOR RELIEF
### Duty to Grant ELC Waiver of Fees for External Correspondence, FOIA No. R10-2013-008285 -- Declaratory Judgment

64. Plaintiff ELC re-alleges paragraphs 1-63 as if fully set out herein.

65. Plaintiff ELC is entitled to have its fees waived for requested external EPA correspondence.

66. Defendant has wrongly denied Plaintiff ELC's fee waiver request for these records.

67. Plaintiff ELC has no requirement to further pursue its administrative remedies.

68. Plaintiff ELC asks this Court to enter a judgment declaring that

    i. ELC is entitled to a waiver of its fees for correspondence as specifically described in plaintiffs' request FOIA No. EPA-R10-2013-008285, and any attachments thereto;

    ii. EPA's denial of Plaintiff ELC's fee waiver request is not reasonable, and does not satisfy EPA's obligations under FOIA;

    iii. EPA must grant ELC's fee waiver request; and

    iv. EPA's refusal to grant this request is unlawful.

## FOURTH CLAIM FOR RELIEF
### Duty to Grant ELC Waiver of Fees for External Correspondence FOIA No. R10-2013-008285 -- Injunctive Relief

69. Plaintiff ELC re-alleges paragraphs 1-68 as if fully set out herein.

70. Plaintiff ELC is entitled to injunctive relief compelling Defendant to grant its request to have its fees waived.

71. This Court should enter an injunction ordering the Defendant to grant Plaintiff ELC's fee waiver within 10 business days of the date of the order.

## FIFTH CLAIM FOR RELIEF

**Duty to Grant Plaintiffs' Fee Waiver for Internal or Intra-governmental Correspondence, FOIA No. R10-2013-008285 -- Declaratory Judgment**

72. Plaintiffs re-allege paragraphs 1-71 as if fully set out herein.

73. Plaintiffs are entitled to have their fees waived for requested internal or intra-governmental EPA correspondence.

74. Defendant has wrongly denied plaintiffs' fee waiver request for these records.

75. Plaintiffs have exhausted their administrative remedies.

76. Plaintiffs ask this Court to enter a judgment declaring that

    i. Plaintiffs are entitled to a waiver of theirs fees for all correspondence as specifically described in plaintiffs' request FOIA No. EPA-R10-2013-008285, and any attachments thereto;

    ii. EPA's denial of plaintiffs' fee waiver request is not reasonable, and does not satisfy EPA's obligations under FOIA;

    iii. EPA must grant plaintiffs' fee waiver request; and

    iv. EPA's refusal to grant this request is unlawful.

## SIXTH CLAIM FOR RELIEF

**Duty to Grant Plaintiffs' Fee Waiver for Internal or Intra-governmental Correspondence, FOIA No. R10-2013-008285 -- Injunctive Relief**

77. Plaintiffs re-allege paragraphs 1-76 as if fully set out herein.

78. Plaintiffs are entitled to injunctive relief compelling Defendant to grant their request to have their fees waived for internal or intra-governmental correspondence.

79. This Court should enter an injunction ordering the Defendant to grant plaintiffs' fee waiver within 10 business days of the date of the order.

## SEVENTH CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

80.  Plaintiffs re-allege paragraphs 1-79 as if fully set out herein.

81.  Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States

reasonable attorney fees and other litigation costs reasonably incurred in any case under this

section in which the complainant has substantially prevailed.

82.  This Court should enter an injunction ordering the Defendant to pay reasonable attorney fees

and other litigation costs reasonably incurred in this case.

83.  Plaintiffs have a statutory right to the records they seek, Defendant has not fulfilled its

statutory obligations to provide the records or a substantive response, and there is no legal

basis for withholding the records.

WHEREFORE, plaintiffs request the declaratory and injunctive relief herein sought, and

an award for their attorney fees and costs and such other and further relief as the Court shall

deem proper.

Respectfully submitted this __13th___ day of November, 2013,

FREE MARKET ENVIRONMENTAL
LAW CLINIC

Christopher C. Horner
D.C. Bar No. 440107
1489 Kinross Lane
Keswick, VA 22947
(202) 262-4458
CHornerLaw@aol.com

David W. Schnare
Free Market Environmental Law Clinic
D.C. Bar No. 1015635
9033 Brook Ford Rd.
Burke, VA 22015
571-243-7975
SchnareFME@gmail.com

ATTORNEYS FOR PLAINTIFFS